All rise. Oh yes, oh yes, oh yes. The Honorable Cutler Court, 5th District, the State of Illinois, is now in session. Please be seated. Good morning, ladies and gentlemen. Judge, may I rise for public personal privilege? Yes, you may. Judge, does it sound like to introduce to you Mr. Dustin Coates. Dustin is a third-year law student at Sonoma University and is serving as a law clerk at my firm this summer. I would ask for your permission to join me and take a break. Certainly, you have our permission. It's nice to welcome you. We have the County of Shelby, State of Illinois v. David Galvin and Barbara Galvin. We have Gina Vanderhyde for the appellant and Mr. Eppersbacher for the appellee. And you may begin when you are prepared to. You may please report. Counsel. Your Honor, I raised four points of error in my brief. The first point of error that I raised was as to the county portion of the first amendment complaint, the zoning. We have a statute that comes into play, 55 ILCS 5-5-12-001. That statute says that counties do not have the authority to zone property for the purpose to which it has been lawfully devoted. It gives some exception. And then nor shall the powers be exercised so as to deprive or so as to impose regulations or eliminate uses with respect to land that's being used for agricultural purposes. And that's what we have here. The land in question was a platted subdivision. A previous owner in title, not the Galvins, was going to subdivide that land. He sold off two lots and then he abandoned the effort and he farmed the land for... You said he was going to subdivide it. He actually did subdivide it. He did subdivide it. And it platted. And he sold the two lots and then... But you subdivided it and had it platted. Correct. It's a platted subdivision, yes. But then instead of continuing building the lots and building the subdivision, he farmed the rest of the area in question. So we have two houses surrounded by a field in this case. And the Galvins watched for a long period of time while that land was farmed. And then eventually they purchased the land in question and they did not continue with the subdivision. They leased it, I believe, to a tenant farmer. And the land was, in fact, at the time being used for agricultural purposes. It was being farmed. How much of that was being farmed? Everything but the two lots that were sold. And I'm not sure exactly how many acres in question we're talking about, but it was a field, basically. And they hadn't done any search to see how the county had zoned that? I don't believe they did. They purchased the land without an attorney. And they purchased it, I think, just from the person who was going to subdivide it. He, I don't believe, ever indicated to them, although it's not on the record, that it was zoned single-family residential. So in this case, then, I am arguing that the county should not be allowed to regulate this land because of the statutory language that the county cannot exercise those powers with regard to land that is being farmed. And that's, again, what is the case here. There are a couple of cases, I think, that are instructive. The county of Knox case outlines how the counties have the authority to regulate and restrict the use of land, but that authority is limited by the statute, as we said. And also the county of Kendall case, the court reached the conclusion there that agricultural land use is controlled by the statute rather than controlled by the county zoning ordinances. The second point of error I raised was that the trial court granted incorrect relief to the plaintiff after entering a summary judgment in Shelby County's favor. The court, in fact, entered a ruling forcing the Galvins to subdivide this land, to create a subdivision. And the Galvins own a campground. They maintain the campground. They do the business end of it. They're not in the business of real estate development. I don't think they know anything about how to develop a subdivision, how to build streets or sidewalks, water mains, anything that's listed in the ruling of the court. And, in fact, this brings with it a lot of risk. And I think that's one of the reasons why the court's ruling was unfair. There's a chance that the Galvins could do all this, create the water mains, the sidewalks, the streets, create the lots, and then nothing sells. And then there they are. And they've expended this large amount of money, and they're just out. And so I think that for a zoning violation, which is what the court found, I think that goes a little bit too far. And I think it doesn't make a whole lot of sense to force the Galvins to build the subdivision. I think a more appropriate ruling would have been for the court to instruct the Galvins to seek a change in zoning from what it was back to agricultural. And that might have cured the problem really easily. The third point of error... Would they need the court's permission to do that? I don't think they need the court's permission to do that. But I'm just saying I think that that would have solved the problem that we had. Because the zoning is, I think, single-family residential. And so if the Galvins would have moved it back to agricultural, that would have solved the problem. But they didn't even try to do that. They did not even try to do that. The first indication they had of any problem was service of the First Amendment complaint. The original complaint dealt only with a row, the amount of row that they had joined up to a county row. And we'll get to that in a minute. And then the First Amendment complaint came, and that included the zoning count. So they, in my opinion, didn't even have a chance to go to the county board and try to rezone. Also, then, the third point of error was that the trial court erred when it granted the plaintiff's motion to strike the affirmative defenses, specifically the doctrine of laches. I believe it should be applied in this case. We had not alluded to this earlier. The Galvins owned land adjacent to the land in question. They watched as it was farmed by the predecessor in title. Then they purchased land, and an amount of time went by yet, and then they were sued for a zoning violation. And I think that they did not have any indication that there was a problem. They thought everything was fine. They didn't believe that it was going to be enforced, and then all of a sudden it wasn't enforced to their detriment. And I think the doctrine of laches should have been applied. I cited Chicago v. Grendy, where the court in that case found that laches applied to a city. I think it should apply to Shelby County as well. Certainly the rule is that it does not apply against the municipality or zoning authority. But in this case, I think the exception to the rule should be allowed. And the final point of error that I raised was that summary judgment should not have been entered as to count 4 of the first amended complaint. That is the count that applies to the road. We have an amount of road here that the township had maintained, and it was a north-south road. The Galvins extended that road and made it basically a driveway into their property. The township believes that it's going to be considered a public road and that it needs to be maintained by the township, and that they're losing motor fuel tax because of this extension of the road. In fact, I think it should be a driveway. And the court in this case found that the defendants, the Galvins, did not have permission to join that road to the township road. We submitted dueling affidavits, some of which were from the same people. Two of the same individuals submitted affidavits for the Galvins and also affidavits for the township. They were township employees or former township employees. I think that summary judgment should have been denied in order to clarify what those people meant, why they submitted affidavits on our side and also the township's side. And the issue for summary judgment was that the Galvins believed that they had permission, or at least tasked that permission of the township. Nobody ever told them, hey, don't build that road, during the time that they were building it. And in fact, once it was built, then was when the problem started. And who did they claim they had the permission from? Well, there was an individual, a Brad Agney, who was a township employee, and he was building the road for the Galvins on his own time, not as part of the county, using his own time, his own equipment. But it's the Galvins' opinion that they at least, that the county at least was on notice because of that, that nobody objected. And in fact, I think the acknowledgment of the individual, Roy Augusty, because of his religion, he doesn't swear, so it's not affidavit, it's an acknowledgment. He claims that he did not want the road in the Shelby Township Road District, but it doesn't say specifically that he objected. He didn't ever tell the Galvins, I don't want it there. I think by their inaction, they gave task that permission to do that. And so the Galvins, in fact, you know, continued building the road, and like I said, it was built, and that's when the problem started. And so I think that summary judgment was inappropriate in this case. I think we should have gone to trial on the issue of whether they did have permission. And therefore, I am asking this court to reverse the trial court and to find that summary judgment was inappropriate in this case. And that's everything I have, unless you have further questions. Thank you, Ms. Vonderheide. Thank you for the opportunity to respond. Mr. Evans-Bakker? Thank you, Mr. Chairman. May it please the court, Ms. Vonderheide, my firm is here today representing both the interests of Shelby County and Shelbyville Township. Mr. Lowley has recently been appointed an associate judge and state's attorney, so he'll be joining you folks and stop our argument today. What I hear through the argument of my learned opponent is the plaintiff cry of the Galvins, it ain't fair, it ain't fair. And as Arlo Guthrie was wont to note in Alice's Restaurant, fair is fair and frienzo he was, but Arlo was convicted of littering because the law did not allow him to throw his trash down with the rest of the trash, even though it seemed perfectly logical that he should be allowed to do that. That's what we have here. Questions of fairness are subjective, and they should not and do not enter into the proper legal analysis of the position of these parties on this appeal and before the trial court. So let's look at that a little more carefully. And as a general proposition, let's look at the first three arguments that were presented to you today with regard to the first admitted complaint, Count 1, which is the county's complaint asking the court to compel the Galvins to do what the subdivision ordinance of the county requires, namely to develop the subdivision that they purchased. What she's really asking here is for this court to grant summary judgment in favor of the Galvins, saying, Galvins, you can do exactly what you did. You can buy the subdivision, you can sit on it and not develop it, and you can stay there forever. And the effect of reversing the trial court's judgment is going to be exactly that. There's nothing left to try. There are no contested issues of operative fact on the first admitted complaint, Count 1. So summary judgment was proper. And we might choose to argue all of this, whether or not that summary judgment should have been in favor of Galvins or whether it should have been in favor of the county. But what you did not hear in my opponent's argument was that she had filed or that her firm had filed on behalf of the Galvins a motion for cross-summary judgment before the trial court. It's not there. So her argument is premised on the fact that there are no contested issues of operative fact with regard to the county's claim. The court granted summary judgment on the county's claim. She never sought summary judgment on behalf of the Galvins. So what are you to do now? Simply reverse it outright and substitute summary judgment in favor of the Galvins? No, you should not do that. And you should not do that for three very good reasons. First of all, as Judge Welch noted, this ground at the time that it was turned into a subdivision was legally zoned single-family residence because that's what you have to have to have a residential subdivision under this zoning ordinance. When that happened, the legal use of that property ceased to be agriculture and became single-family residence. And so the statute in question, which is the enabling statute that permits counties to engage in zoning, allowed the county to accept the request of the landowner to rezone this property from agriculture to subdivision and single-family residence. And the instant that happened, agriculture was no longer permitted use within that property. Now, was it in fact used for agriculture? Yes, it was. Did anyone go to court and say stop that? You shouldn't be farming this ground. It's a subdivision. No, they didn't. Does that matter? No, of course it doesn't matter. Unless an equitable doctrine intervenes, such as latches, and I'm going to talk about that in a minute. But this is the legal argument, the legal argument under the statute. So if the legal use is single-family residence and somebody comes in there and wants to use it for an agricultural purpose, is it capable of being enjoined? Of course it is. And in fact, that's what the case is about when you look at the County of Knox. You know, County of Knox is a case in which a farm had been used for row crops for a long time, and it changed hands and the new owner decided to put in a confinement hog operation. Well, the County of Knox didn't want a confinement hog operation immediately adjacent to its municipalities, and so it sued to enjoin that action, saying that a hog operation was not a traditional agricultural use. It went all the way to the Illinois Supreme Court. Illinois Supreme Court said, no, you've got to look and see what the legal zoning of the property is. And in this case, County of Knox, the legal zoning is agriculture. And raising hogs in a confinement hog operation or otherwise is an agricultural purpose. So you cannot zone against it. Well, in the context of the case at Barr, the legal zoning is single-family residence, and the fact that it's been row cropped for many years doesn't make any difference. If somebody goes in there and wants to put a confinement hog operation on this property, does the county have the power, the jurisdiction, the authority under the law to enjoin it? Of course they do. Why? Because the purpose for which it is legally dedicated is single-family residence. And so, in fact, County of Knox actually is a case that supports the county's position on this matter. You state on page 14 something I need to have you clarify. It says that the protestations of the Galvins that they did not know that Lithia Estates was planted and accepted is belied by the public record. I assume that's the zoning. No, actually it's two things, Judge Wexton. It's the zoning. It's also the deed. Okay, so that's my next one. And the deed. What fact in the deed would say that it is? It conveys lots of blocks. Okay. Not farmland. Not farmland. And it's in the record, the exhibits. So they knew, or they should have known, and what you got in the reply brief was a protestation, well, these folks are pro se. They purchased this land pro se. Well, okay, they purchased it pro se. What does that mean? Do they have a different standard? Is there a different standard of law applied to pro se litigants than there is to litigants represented by counsel? I believe the rule is exactly to the contrary. We spend a lot of time telling pro se litigants, look, you have a right to represent yourself, but we think it's a bad idea. We think you need a lawyer. Well, these folks chose not to do that. And now they say, well, it's not fair. It's not fair. It may not be fair in their view. It is in ours. But that's not the issue for this court. The issue is whether it's legal. The second issue here is that the claim that the decision rendered by the trial court on the county's complaint against the Gowans to compel them to build their subdivision is, and I'm quoting, is inappropriate, end quote. It ain't fair. It ain't fair. But is it legal? There's not even an argument offered to you in their briefs that somehow the remedy crafted by the trial court is not authorized by law. What's the consequence if they refuse to develop it as a subdivision? The county's willing to do it and take a lien against the real estate for the cost. And not only, Judge Wexton, is that the consequence, but it actually is an incentive for the Gowans to go ahead and do it themselves because they don't have to follow, they're not bound by prevailing wage laws. And they're not prevented from trying to seek it being reasonable. No, they're not prevented from trying to seek it being reasonable, but they're not likely to get it done because there's not only two lots surrounded by this farmland that Ms. Vonderheim described to you. She forgot to tell you in that comment about the road. So there's a road, two lots with homes on them and families living in them. And, of course, they are necessary parties to any rezoning of this subdivision because they are already in their subdivision. And they have a very real interest in not having the land rezoned around agriculture if for no other reason they don't want that hog lot built over there. And believe me, the way the parties in this case are going, that's the next case that's going to be in front of you if it gets rezoned. So the chances of it getting rezoned are not very good, but they have a right to seek the rezoning. The county board may or may not grant it. So I think with all due respect, I think their ability to seek the rezoning is probably not terribly germane to this. It is what it is. I mean, these folks bought a subdivision. They've been ordered to develop it. They've never sought any alternative relief, and now it's probably too late. But in any event, the point is that there's nothing in this order that is even claimed to be illegal. There's a small fine as compared to the total possible fine. There's an affirmative injunction to do what the law says that they were supposed to do years ago, and that is develop the subdivision. And there's a provision if they fail to do it that another mechanism will be used to accomplish that, and they will end up paying for it. Nothing illegal about any of that. So why is that issue even before you? It ought not be. The third argument is latches. It ain't fair. It ain't fair. Latches does not run against the sovereign. We know that because of the Shelbyville versus Shelbyville-Restorian case. My firm argued that case here and before the Supreme Court. The rule of law is clear.  The township and the county are sovereigns. So do those exceptional circumstances exist? Well, it's not hard to make that legal analysis. The legal analysis is, is there some affirmative action on behalf of the sovereign that could allow an invocation of those equitable doctrines against it? And in this case, there's none even alleged. None alleged. There is not one affirmative act alleged against the county or the township that would give a basis for an argument that the equitable doctrine of latches should be allowed to apply. Now, I don't think even if there was that it should, but I don't have to reach that issue with you because it's never been alleged. And it's not alleged because there isn't any. There is no affirmative action. It runs contrary to our sense of fair play to say, well, we've got a different set of rules for the sovereign than we do for everybody else because if an individual litigant had sat on his rights for 30 years, latches would be the first place that we as jurists and attorneys would look to litigate this case. But we don't have the same set of rules because the sovereign is comprised of people, and sometimes people don't do their jobs. But the public has a larger interest, a public interest, that goes beyond the question of equity. And it says that if the public is going to be harmed, we're going to have a special set of rules to determine whether we're going to let one individual harm the public wheel as opposed to accepting the sovereign from these equitable doctrines such as latches and the statute of limitations. And that's what Shelbyville Restoring says. And, in fact, it's a very instructive case because Shelbyville Restoring deals with exactly the same kind of situation, a failure to build roads and subdivisions. And why is that against the public wheel? Well, because if those roads become public ways,  which means the taxpayers end up paying for that which galvans are legally obligated to defray. And that ought not be the ruling of this court. Why? Because the county never did anything affirmatively to lead the galvans down the dark path. They went there blithely and blindly on their own, and they are responsible for their own legal position because all people are responsible, but no more. What kind of system have we got? If it is a defense to a case, judge, that's the law, but I didn't know it. You have to know the law. You are compelled to know the law. You are charged with the knowledge of the law. And ignorance of the law, hornbook, ignorance of the law is no excuse. The most interesting argument for the township, of course, is the argument that summary judgment should not have been entered with regard to the First Amendment Complaint Count 4. And as I understand the argument, the argument is there should not have been summary judgment entered because there was a contested issue of operative fact, whether or not galvans believed that the township owned the road that was in existence in the subdivision. And there was a question of fact as to whether or not the galvans reasonably believed that they needed permission from somebody to connect their commercial road to the township's road district. And the trial court initially, you will recall, found that those were contested issues of fact and denied the motion for summary judgment. But on rehearing, I pointed out to the court, it is not whether or not it is a contested issue of fact, it is whether it is a contested issue of operative fact. And what the galvans' subjective belief was with regard to their right to hook onto a township road district with their commercial road, and whether or not the galvans believed or did not believe that they needed anybody's permission to do that, is immaterial. And in fact, for purposes of that argument, I conceded to the trial court, and I will concede to you right now, the galvans did believe it. Had those roads been dedicated and accepted by the... They've been dedicated but not accepted. Not accepted. They've been dedicated but not accepted because they hadn't been built. Oh, okay. Once they're accepted, you see... And it's the duty of the... Yeah, it's the duty of the government to maintain the building. So they've been dedicated, and they were sitting on the flats dedicated on the record... No, I'm talking about the road to the two houses. The road to the two houses. That road was dedicated and accepted. Okay. Then there were other roads in the subdivision that were dedicated but not accepted. Okay. And one of those roads that was dedicated but not accepted was 250 yards north of the township road to the north boundary of the subdivision. And that road was built by galvans, and it was substandard. And therein lies a great deal of the problem. You know, the substandard road is built by the doctrine of user after 15 years. If nobody does anything about this, it becomes a public way, and it becomes part of the township road district system. And so the township didn't want to have to build Galvans Road. Plus, the road, as Ms. Monderheim indicates to you, was like a driveway, was a road which carried traffic of up to 1,000 cars a day. 1,000 cars a day from the state highway to these people's campground right through the middle of this subdivision. So this is not an arbitrary contest between the wills of the galvan and the wills of the township. This is a serious public safety issue. You have a subdivision with people and families living in it, and the galvans, by their own fiat, change the nature and character of the road that serves that subdivision from a road that carries less than 10 cars a day to one that on some days carries up to 1,000. And where are all these 1,000 cars going? To this campground. It's a very large campground. And on a holiday weekend, Memorial Day, Fourth of July, Labor Day, any time in between on any given weekend, you'll have 1,000 cars going back and forth. And we know that because it's in the record. We had a study done by the county engineer to test how many cars went over in a given day. And we knew how many cars went over in a given day before because you've got the affidavits of Robin Robertson, the township highway commissioner, that it was less than 10 a day. So this was a huge increase in traffic. So there's a rational basis for the township saying, We're not going to allow this. We're not going to have this. You can't just compel us to take a commercial roadway into our highway system because you don't want to build it to spec and you want to run it right through the middle of a subdivision. We're not going to do it. And the law says we don't have to do it. And that's what we're here for. The question is, does the law compel us to accept the arbitrary determination of the gallons that they're willing to put their commercial roadway into our township road district and compel us to bring it up to spec and maintain it forever after? And the answer under the law is no. And that's why Sumner Judgment was proper because their subjective beliefs as to what their rights were and their subjective beliefs as to what the status of the township's road was mean nothing, legally mean nothing. It ain't fair. It ain't fair. From their point of view, from the point of view of the people living in that subdivision whose children play in the front yard, from the point of view of the township who has to maintain this road and has to build it up to spec, it certainly is fair. But fair is as fair was. It doesn't matter. What does the record reveal about if they believe this was farmland and not commercial, what was the purpose of the roadway being built? Obviously we know it was to get to the campground. Exactly. But what did it? Is there any evidence that they said they were just doing it to improve access to the farmground? Nope. Nothing in the record. You can search Mr. Gallagher's wife, who's a litigant, and this didn't find anything. You can search Mr. Gallagher's affidavit until your eyes are crossed, you won't find anything like that. This road was there for the only purpose that it serves, and that is 1,000 cars a day to get back and forth to this campground. What is in the record, Judge Wexner, is that a quarter of a mile down the road on Route 16 is the original entrance to the campground, and the original entrance to the campground runs by a house, and that house is occupied by David Galvin's mother. Thank you. Thank you, Mr. Evans. Thank you very much. Any other questions? You have the opportunity to rebut Ms. Vanderhoef. Mr. Eberspacher is correct when he says fair is fair, and this is not fair. This court has the ability to choose substance over form, and you can do that in this case. Would it be easier on Mr. Eberspacher and my firm and our clients for you to uphold this trial court? And in this case, yeah, it would be easier. But it's not what's right. The statute that we alluded to, 12001, has the lawfully devoted clause, and then nor shall the powers be exercised, and that's what we're talking about, the part after the word nor, and that's the part that applies in this case, and it says that the county doesn't have the authority to zone this property. The County of Knox case, I think it's less relevant what the zoning started out as than what it is about the authority of the county. The county does not have the authority under the statute in the legislative history of this case. There are the two houses we talked about that were going to be the beginning of this subdivision. One of those houses sat empty for the first few years of this litigation. Now, evidently, it has somebody living there. And the Galvins, can they seek rezoning? Sure. But you can bet that Mr. Eberspacher is going to hop and pop and object to that, so it's not likely that they're going to get it. He's right. Now, the Shelbyville restorative case, it talks about exceptional circumstances, and I think there are exceptional circumstances here. 30 years where nothing was said to enforce the zoning, and that's most of my lifetime. That case also did not have a predecessor in title like we have here. The Galvins predecessor in title was the one that was going to build a subdivision and then decided not to, and then passed it on to the Galvins. And I don't think they should be punished for the wrongs of what that person did. And as to the count four of the amended complaint, the summary judgment, there is a genuine issue of material fact here. Why didn't the township object? They saw the road being built. Why didn't anyone say to the Galvins, hey, don't do it. Don't build that road. Why were they building the road? What's that? Why were they building the road? For access to their campground, better access to their campground. The original entrance to the east has a curve and then another curve, and they were trying to eliminate one of those curves. Which would indicate commercial use as opposed to agricultural use. That's correct. I mean, it was a driveway, their campground. I mean, it was over from the township road. It went across the Galvins property into more of their property, basically. You know, a thousand cars a day in the traffic study. That was done on the Fourth of July weekend. You know, you're not going to get that many cars on November 30th or February 19th or whatever. Sure, it increases traffic on the road somewhat, but not all day, every day of the year. And I think, you know, in this case, fair is fair. This court should reverse the trial court. How can they say they thought they were buying farmland when they spent money to develop a road for commercial uses? The road cut across their farmland. So there was still farmland on either side of that road. And the road just went from the existing road, you know, across the field and into their campground. Any other questions? No, thank you both. Our offensive briefs will take them out under advisement and under rulings and due course. Thank you for your service.